IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Roger Cleveland Golf Company, Inc., | ) | Civil Action No. 2:09-2119-MBS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **RESPONSE IN OPPOSITION TO** |
| | ) | **BRIGHT BUILDERS' RENEWED** |
| Christopher Prince, Sheldon Shelley, Prince | ) | **MOTION FOR JUDGMENT AS A** |
| Distribution, LLC, and Bright Builders, | ) | **MATTER OF LAW; MOTION FOR A** |
| Inc. | ) | **NEW TRIAL; AND MOTION FOR** |
| | ) | **RELIEF FROM JUDGMENT** |
| Defendants. | ) | |

COMES NOW the Plaintiff, Roger Cleveland Golf Company, Inc. ("Cleveland"), by and through its undersigned attorneys, and hereby submits this response in opposition to Defendant Bright Builders, Inc.'s ("Bright Builders") Renewed Motion for Judgment as a Matter of Law, Motion for a New Trial and Motion for Relief from Judgment. In support of its opposition, Cleveland states as follows:

## SUMMARY

On March 10, 2011, a jury returned a verdict in favor of Cleveland finding that Bright Builders willfully contributed to the counterfeiting and infringement of Cleveland's trademarks and willfully violated the South Carolina Unfair Trade Practices Act ("SCUTPA"). Now, Bright Builders asks this Court to enter judgment in its favor or grant it relief from judgment arguing that insufficient evidence was produced at trial to sustain the jury's verdict. However, while Bright Builders' tries to cast itself as a passive web service provider akin to eBay or Google asking this Court to delve into the minutiae of contributory infringement law as it pertains to *passive* service providers with *generalized* knowledge of infringing conduct, Bright Builders fails to recognize or acknowledge its *active* participation in the creation, maintenance, and promotion of

copycatclubs.com and its *specific* knowledge of the infringing conduct being committed thereon. As demonstrated herein, there was ample evidence introduced at trial showing Bright Builders' specific knowledge of infringing activity taking place on Prince's website and ample evidence demonstrating that, despite this specific knowledge, Bright Builders continued to assist in copycatclubs.com's creation, maintenance and promotion all to the detriment of Cleveland and to the public at large.

## LEGAL STANDARD

Not surprisingly, in view of the importance of the jury in our system of justice, a party seeking a new trial faces a demanding burden. In this matter, Bright Builders seeks judgment or a new trial under a triad of civil rules of procedure including Fed. R. Civ. P. 50(b), 59, and 60. A District Court's review of a jury finding under Rule 50(b) is the most restrictive and does not allow a district court to weigh the evidence presented. "A district court should grant a Rule 50(b) motion only if the court 'determines, without weighing the evidence or considering the credibility of the witnesses, that substantial evidence does not support the jury's findings.'" *Campbell v. BP Amoco Polymers, Inc.*, 75 Fed. Appx. 907, 909-10 (4th Cir. 2003) (citing *South Atl. Ltd. P'ship of Tenn. L.P. v. Riese*, 284 F.3d 518, 532 (4th Cir. 2002)). Under Rule 50(b) the question for the Court becomes simply "whether a jury, viewing the evidence in the light most favorable" to the prevailing party, "could have properly reached the conclusion reached by this jury." *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 543 (4th Cir. 2003); *see also Golson v. Green Tree Fin. Servicing Corp.*, 26 Fed. Appx. 209, 211 (4th Cir. 2002) ("If, viewing the facts in the light most favorable to the non-moving party, there is sufficient evidence for a reasonable jury to have found in [its] favor, we are constrained to affirm the jury verdict."). "If reasonable minds could differ" about the result, the court "must affirm the jury's verdict." *Bryant*, 33 F.3d at 543.

Similar to Rule 50(b), the Fourth Circuit has held that a new trial will be granted under Rule 59 in only three, limited circumstances if the verdict is :(1) is against the clear weight of the evidence; (2) is based upon false evidence; or (3) will result in a miscarriage of justice. *Campbell*, 75 Fed. Appx. at 910; *Bryant*, 333 F.3d at 543. Likewise, Rule 60 allows for relief from judgment in instances where "any other reason justifies relief." Fed. R. Civ. P. 60(b)(6).

At the crux of Bright Builders' argument as to why its motion should be allowed under each of these rules is the allegation that the jury's finding was against the clear weight of the evidence presented at trial. Not surprisingly, as Bright Builders had its day in court, it faces an uphill battle when asking a District Court Judge to nullify a jury's verdict by ordering a new trial. While the Fourth Circuit does not appear to have squarely stated what it means for a verdict to be against the "clear weight of the evidence," authority from other circuits shows that this is an exacting standard. For example, the Third Circuit requires that "new trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991). Likewise, the Fifth Circuit has held that "If the new trial is granted on evidentiary grounds, the jury's verdict must be against the great -- not merely the greater -- weight of the evidence. … Against the great weight of the evidence is a standard not easily met." *Scott v. Monsanto Corp.*, 868 F.2d 786, 789 (5th Cir. 1989) (internal quotations omitted).

In determining whether to grant a new trial, the Fourth Circuit has warned that a "trial judge should not denigrate the jury system by granting a new trial on grounds of insufficient evidence and substituting his own judgment of the facts and witness credibility, particularly when the subject matter of the trial is simple and easily comprehended by a lay jury." *Abasiekong v. City of Shelby*,

744 F.2d 1055, 1059 (4th Cir. 1984) (internal quotation omitted); *Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179, 201 (4th Cir. 2000).

Furthermore, "[i]n a Federal Court, it is for the jury, not the Judge, to say what evidence it will believe and what inferences or conclusions it will draw therefrom even though it is susceptible to conflicting inferences." *Atl. & Pac. Stores, Inc. v. Pitts*, 283 F.2d 756, 757 (4th Cir. 1960). The jury is "entitled to give the testimony of any witness such credibility, if any, as the jury determined that it deserved." *Laubach v. Khajawai*, No. 94-2421, 1995 U.S. App. LEXIS 24361, at *10 (4th Cir. Aug. 29, 1995). The jury may accept or reject any part of a witness's testimony. *See E. Tenn. Nat. Gas Co. v. 7.74 Acres in Wythe County*, No. 06-1716, 2007 U.S. App. LEXIS 11991, at **17 (4th Cir. May 22, 2007).

## ARGUMENT

I. **Bright Builders Has Failed To Carry Its Burden As There Was Ample Evidence Upon Which The Jury Could Base Its Verdict**

A. The *Inwood* Standard

In order to ascertain whether the jury's verdict was supported by the evidence, the Court must first determine the standard under which Bright Builders was held liable. Despite Bright Builders' efforts to muddy the waters, the standard for contributory trademark infringement is clear in the Fourth Circuit. If Bright Builders continued to provide products and services to "one whom it knows or has reason to know is engaging in trademark infringement," Bright Builders can be held "contributorily responsible for any harm done as a result of the deceit." *Georgia Pacific Consumer Products, LP v. Von Drehle Corp.*, 618 F.3d 441, 450 (4th Cir. 2010) (discussing the standard laid out by the Supreme Court in *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844 (1982)). As it is undisputed by all parties that Cleveland's trademarks were infringed, "the next step in our analytical journey is to apply the teaching of

*Inwood* to the facts of the present case" – i.e. was there sufficient evidence presented to the jury that Bright Builders continued to provide products and services to Prince when Bright Builders knew or had reason to know that Prince was engaging in trademark infringement? *Id.* at 451. As shown *infra*, ample evidence was presented to the jury which showed that Bright Builders had specific knowledge of the infringement and, despite this knowledge, continued to provide products and services to Prince.

While Bright Builders' motion for a new trial delves into the rapidly evolving law of contributory liability against <u>passive</u> third parties with <u>generalized</u> knowledge of infringement (*see Tiffany v. eBay*[1] and *Rosetta Stone v. Google),*[2] these cases are inapposite to the present matter as Bright Builders played an <u>active</u> role in the infringement and had <u>specific</u> knowledge of Prince's infringing conduct. Likewise, Bright Builders twists the holding of these cases to fit its needs. For instance, Bright Builders goes on at length about not having "knowledge of the 'identified individual'", although Bright Builders never discusses who that individual should be. However, the courts in *Tiffany v. eBay* and *Inwood* are clearly referring to the infringer. In the present case, it was undisputed that Bright Builders knew it was doing business with Prince and admittedly provided him coaching and assistance in developing his web site copycatclubs.com.

Moreover, while Bright Builders attempts to paint itself as a passive web-host, the evidence at trial demonstrated that Bright Builders actively reviewed copycatclubs.com, submitted the domain name copycatclubs.com to multiple search engines, coached Prince in development of the copycatclubs.com web site, offered to link Prince's golf site to one of its web advisors' golf sites, and even continued to offer hosting services after this lawsuit was filed. Thus, this Court need not mull over *Inwood's* application as to passive third parties with a generalized knowledge of

---

[1] *Tiffany Inc. v. eBay, Inc.*, 600 F.3d 93 (2nd Cir. 2010)

[2] *Rosetta Stone Ltd. v. Google, Inc.*, 730 F.Supp.2d 531 (E.D. Va 2010)

infringement because the evidence at trial went far beyond that showing Bright Builders' active participation and specific knowledge of the infringement. Therefore, the Court can simply follow the standard as articulated by the Fourth Circuit in *Georgia Pacific*. Bright Builders can be held liable for contributory infringement if it knew or should have known that Prince was selling infringing clubs through copytcatclubs.com and despite this knowledge, continued to provide products and services to him.

B. The Jury was Presented with Evidence that Bright Builders Knew or had Reason to Know of the Infringing Activity of Prince

Bright Builders does not dispute that it provided products and services to Prince or that Prince's website sold infringing products. Rather, the only element of the contributory infringement standard attacked by Bright Builders is the knowledge element. Bright Builders argues that "Cleveland did not meet its burden to show that Bright Builders had more than a general knowledge or reason to know that its service is being used to sell counterfeit goods." Plaintiff's Memorandum in Support of the current motion, pg. 24. As an initial matter, the jury disagreed with Bright Builders on this assertion as the jury was specifically instructed that in order to find Bright Builders liable, that it had to find that Bright Builders had more than a general knowledge of the infringing activity. In fact, the Court's instruction to the jury on this point was clear as the Court stated the following instruction to the jury regarding the knowledge element necessary:

> **Knowledge in this context means that Bright Builders had more than a general knowledge or reason to know that its service was being used to sell counterfeit goods. Cleveland Golf must show by a preponderance of the evidence that Bright Builders had some contemporary knowledge that the website at issue was being used or would be used in the future for infringing activities.**
>
> The knowledge element is satisfied by proof of a preponderance of the evidence that Bright Builders had either actual or constructive knowledge of the infringing activity. Actual knowledge exists where it can be shown by a defendant's conduct or statements that it actually knew of specific instances of direct infringement.

> Constructive knowledge exists where it can be shown a defendant should have known of the direct infringement.
>
> The knowledge element is similarly satisfied if Cleveland Golf can show by a preponderance of the evidence that Bright Builders was willfully blind to the infringing activity. In other words, if Bright Builders had reason to suspect that users of its service were engaging in infringing activities, it may not shield itself from learning of the particular infringing transactions by looking the other way. Ignorance is no defense to violations of the Lanham Act.

Jury Instructions, Docket No. 118, Instruction 9.3 (emphasis added). While Bright Builders continues to argue that Cleveland did not meet its burden of showing more than general knowledge on the part of Bright Builders, this argument was considered and specifically rejected by the jury. Further, the jury found that Bright Builders' conduct was <u>willful</u> under both the Lanham Act and the South Carolina Unfair Trade Practices Act. These findings demonstrate that the jury believed the evidence which showed Bright Builders was much more than a passive service provider. As the Court is not permitted to weigh the sufficiency of the evidence on a Rule 50(b) motion, Bright Builders' motion for judgment as a matter of law must be rejected for this reason alone.[3]

As to Bright Builders' motions under Rules 59 and 60, the Court must take the jury's finding that Bright Builders had "more than a general knowledge" of Prince's infringing conduct and examine whether it was against the clear weight of the evidence – i.e., the Court must determine whether the jury's finding "resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Consolidated Rail Corp.*, 926 F.2d at 1353. No such miscarriage of justice has occurred in this case as the evidence presented to the jury easily

---

[3] While the majority of Bright Builders' motion argues that the Lanham Act claims cannot stand, Bright Builders also argues that Cleveland's judgment under SCUTPA rises and falls with the Lanham Act claims. This is an incorrect statement of law. Based upon the abundance of evidence presented to the jury of Bright Builders unfair trade practices, the jury had a separate and independent basis upon which find the Bright Builders had violated the SCUTPA. For example, the evidence that Bright Builders told Prince to take images from Cleveland's website to put them on his own website is sufficient evidence to support the jury's finding of liability under the SCUTPA. As such, Bright Builders' contention that the SCUTPA judgment fails if the Lanham Act fails is an incorrect statement of law and a wholly unsupported argument by Bright Builders.

supports the jury's finding that Bright Builders knew or should have known that Prince was infringing upon the trademark rights of Cleveland.

Perhaps the most obvious evidence of Bright Builders' knowledge comes from the undisputed evidence that the website at issue was called copycatclubs.com. The record is replete with evidence that Bright Builders was fully aware that the website being used by Prince was named copycatclubs.com and that Bright Builders registered this domain name for Prince. *See* Testimony of Prince, Exhibit A, 6:5-19; Trial Exhibit 13.

While Bright Builders attempts to dodge this clear evidence by stating that "there was no evidence that Bright Builders would have or even should have understood the term "copied" of "copycat" in relation to golf clubs was being used to sell counterfeits," the jury is not required to check its common sense at the door and this evidence alone can support the jury's finding that Bright Builders had actual knowledge of infringing conduct. This is especially true in light of the fact the Prince's web site contained pictures of real Cleveland golf clubs but clearly stated that it was selling only "copies" of those clubs. Moreover, jury instruction 9.1, which Bright Builders did not object to, states that "[a] 'counterfeit' mark is a non-genuine, **copy** of the plaintiff's trademark." (emphasis added). Thus, given that the very word "counterfeit" is defined as a "copy," it is a logical inference that the domain name copycatclubs.com alone provided enough evidence on which the jury could based their knowledge finding. This is further bolstered by the fact that Steve Gingrich of Cleveland testified that there is no such thing as a legitimate copied Cleveland golf club. *See* Testimony of Gingrich, Exhibit B, p. 21:1-6. Bright Builders self-serving claims that it did not realize copied or counterfeit clubs were being sold from copycatclubs.com is legally insufficient. *Coach, Inc v, Gata Corp.*, 2011 U.S. Dis. LEXIS 45045 at n. 5 (D. N.H. April 26, 2011) (the

"reason to know" standard is based on what a reasonably prudent person would understand, not on what the defendant claims he knows).

Similarly, it is undisputed that text on the copycatsclubs.com webpage boasted, "we are your one stop shop for the best copied golf equipment on the internet."   Trial Exhibit 15, pg 35. Evidence was presented to the jury that Bright Builders coached and mentored Prince in designing this website, that Bright Builders reviewed Prince's text, and that Bright Builders even suggested changes to the website and the written text of the website.   Exhibit A, 8:9-10:4; 15:6-15; 77:6-78:5. There was evidence presented to the jury that Bright Builders told Prince to copy and paste pictures from other websites onto his website.   Exhibit A, 10:5-25.   There was evidence that Bright Builders submitted the domain name copycatclubs.com to search engines in an effort to promote the website. Exhibit A, 12:10-23.   There was evidence presented that Bright Builders was so intimately involved in the creation of copycatclubs.com, that Prince would not have known how to build the site without Bright Builders' help.   Exhibit A, 12:24-13:1; 13:8-14; 77:6-78:5.   There was evidence presented to the jury that Bright Builders taught Prince how to use drop shippers from China.   Exhibit A, 16:18-25.   There was evidence presented that Bright Builders continued to charge Prince for the hosting of copycatclubs.com <u>after</u> Bright Builders became a party to this lawsuit.   Exhibit A, 26:7-12.   Lastly, the jury was even presented with evidence that Prince told a coach at Bright Builders that he was selling copied golf clubs and the coach responded by stating that he would link Prince's website to his own website selling golf clubs.   Exhibit A, 66:25-67:24; 77:6-78:5.

In sum, the above non-exclusive listing of evidence amply demonstrates that Bright Builders was far more than the passive webhost that it now pretends to be.   Evidence was presented to the jury that Bright Builders had far more than a "general knowledge" as to the infringing activities of Prince.   The evidence shows that the jury had a basis to determine that Bright Builders had actual

knowledge of infringement by its review of the webpage and its conversations with Prince in which he informed Bright Builders that he would be designing a website to sell copied golf clubs. Moreover, from evidence presented regarding the name of the website, the suggestion to use drop-shipping, the extensive coaching sessions between Bright Builders and Prince, Prince's statement that he could not build the website without Bright Builders' help, the suggestion of Bright Builders to Prince to "cut and paste" pictures from other websites, the jury could and did conclude that Bright Builders' conduct was willful and that Bright Builders knew or had reason to know that Prince's activities were infringing.

All of the above show that a jury not only had enough evidence presented to them to determine that Bright Builders' knowledge of Prince's conduct was more than just a general knowledge, the jury had a basis to find that Bright Builders had an intimate, specific knowledge of the copycatclubs.com website and the infringing conduct taking place thereon. As such, there was ample evidence presented to the jury to support its finding that Bright Builders had the requisite knowledge to willfully contribute to the infringement of Cleveland's trademarks. Therefore, Bright Builders' argument that Cleveland did not meet its burden to show that Bright Builders had more than a general knowledge of infringement is without merit and the Court should deny Bright Builders request for a new trial based upon the same.

## II.     This Court's Instructions To The Jury Adequately Explained The Law Regarding Contributory Infringement

In its eleventh-hour effort to overturn the jury's verdict, Bright Builders argues that a new trial is needed as the instructions given to the jury regarding the requisite level of knowledge were inadequate and improper.  Bright Builders offers three reasons as to why the Court's instructions were improper.  First, it reargues its position that the jury must be instructed that the plaintiffs needed to prove something other than "should have known."  Second, it objects that the Court did not adequately explain that "users of its service" meant "Prince" and that the Court omitted the language "fails to investigate" as it now contends is required by case law.  Lastly, Bright Builders argues that the instruction stating that "Ignorance is no defense to violations of the Lanham Act" is incorrect, improper, and was not the language discussed during the charge conference.

As discussed in more detail *infra*, the Court's instructions, when construed as a whole, adequately explain the requisite level of knowledge in a contributory trademark infringement matter.  Moreover, as Bright Builders failed to object to the language regarding "users of its service"; failed to object to the omission of the "fails to investigate" language; and failed to object to the "Ignorance is no defense to violations of the Lanham Act" instruction; and since said inclusions and/or omission of the language do not result in plain error, Bright Builders has failed to preserve the objections and they are waived.

### A.     Review of Jury Instructions

"The test of adequacy of instructions… is not one of technical accuracy in every detail.  It is simply the practical one of whether the instructions construed as a whole, and in light of the whole record, adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party."  *Spell v. McDaniel*, 824 F.2d 1380, 1395 (4th Cir. 1987); *see also S. Atl. Ltd. P'ship of Tenn., L.P. v. Riese*, 284 F.3d 518, 530 (4th Cir. 2002).

A party may assign error to an instruction if it properly objected pursuant to Fed. R. Civ. P. 51. Fed. R. Civ. P. 51(d). An objection to an instruction is waived if it is not properly preserved pursuant to Fed. R. Civ. P. 51 and can only be considered by the Court upon a showing of plain error. Fed. R. Civ. P. 51(d)(2); *Spell v. McDaniel*, 824 F.2d at 1399.

>    B.    The Instructions Taken as a Whole Adequately Explained the Law

As stated *infra*, the instructions regarding the requisite level of knowledge were as follows:

> Knowledge in this context means that Bright Builders had more than a general knowledge or reason to know that its service was being used to sell counterfeit goods. Cleveland Golf must show by a preponderance of the evidence that Bright Builders had some contemporary knowledge that the website at issue was being used or would be used in the future for infringing activities.

> The knowledge element is satisfied by proof of a preponderance of the evidence that Bright Builders had either actual or constructive knowledge of the infringing activity. Actual knowledge exists where it can be shown by a defendant's conduct or statements that it actually knew of specific instances of direct infringement. Constructive knowledge exists where it can be shown a defendant should have known of the direct infringement.

> The knowledge element is similarly satisfied if Cleveland Golf can show by a preponderance of the evidence that Bright Builders was willfully blind to the infringing activity. In other words, if Bright Builders had reason to suspect that users of its service were engaging in infringing activities, it may not shield itself from learning of the particular infringing transactions by looking the other way. Ignorance is no defense to violations of the Lanham Act.

Bright Builders' contention that the jury must be instructed that the plaintiffs need to prove something other than "should have known" is an incorrect statement of law. As the *Georgia Pacific* case makes clear, if Bright Builders continued to provide products and services to "one whom it knows or has reason to know is engaging in trademark infringement," Bright Builders can be held "contributorily responsible for any harm done as a result of the deceit." *Georgia Pacific*, 618 F.3d at 450. This argument of Bright Builders was raised, taken under advisement, and rejected by the Court at the charge conference. Transcript of hearing, Exhibit C, 74:24-77:7 ("The knew or had

reason to know language comes directly from the Supreme Court's case in Inwood…").  As the Court has once already recognized that this instruction was a correct statement of binding Supreme Court law as articulated by the Fourth Circuit, it should again find its instruction to be proper for the same reasons.

Bright Builders next argues that because the Court's stated "users of its service" rather than "Prince" and omitted "fails to investigate language" in its willful blindness instruction, that the instruction improperly places a "negligence" rather than "willfully blind" tilt to the instruction.  As an initial matter, this alleged improper language was never objected to at trial and has not been preserved for review except as to whether it was a plain error.  Even so, the instruction as stated adequately explains the law when taken as a whole with the rest of the instructions.  Specifically, the Court also gave an instruction on "willfulness" which read: "A finding of willfulness should ordinarily be made where the defendant knows that its conduct is an infringement or is reckless in not knowing that fact."  Instruction 9.4.  Thus the "willfulness" instruction coupled with the "willful blindness" instruction, taken as a whole, adequately explained the relevant law.  Moreover, as the jury found that Bright Builders' actions were willful – i.e. that they were knowing or reckless – there is little chance this alleged improper language had any effect on the jury's findings regarding the requisite knowledge.  As such, taken as a whole, this instruction too is proper and Bright Builders failed to preserve an objection to the same.

Lastly, Bright Builders now objects to the language "Ignorance is no defense to violations of the Lanham Act."  Bright Builders objects on the grounds that this language was incorrect and misleading and argues that "the instruction that the record indicates was meant to be given is that ignorance of trademark law is no defense."  (Underlining in original).  Bright Builders is being

intellectually dishonest with this Court. The Court specifically stated that it would include this exact language and Bright Builders explicitly stated that it had no objection to the language.

| | |
|---|---|
| COURT: | Okay. Now also it's not on the draft but we talked about it, prior to 10.3, just above that where it says – the paragraph above, I was going to add a charge that ignorance is no defense to violations of the Lanham Act. |
| MR. MCELWAINE: | No objection here, Your Honor. |
| MR. LIZZI: | No objection. |
| MR. DOOLITTLE: | No objection, Your Honor. |

Exhibit C, 42:24-43:5. Clearly, the Court stated that the instruction would be for violations of the Lanham Act, not violations of trademark law as stated by Bright Builders.[4] More importantly, Bright Builders was specifically told that this instruction was to be given and did not object. As such, the objection was not preserved and the issue has been waived. Lastly, even had the objection been properly preserved, this instruction, taken as a whole with the remaining instructions, properly educated the jury on the law and was completely proper. Bright Builders offers no authority to the contrary.

Taken as a whole, all of the Court's instructions to the jury adequately explained the law and contained no plain error. As such, Bright Builders motion for a new trial predicated upon improper jury instructions should be denied.

## CONCLUSION

WHEREFORE, as there was ample evidence presented to the jury of Bright Builders' specific knowledge of Prince's infringing conduct and because there was ample evidence that Bright Builders continue to supply its products and services to Prince despite this specific knowledge, the jury's findings of liability against Bright Builders are supported by the evidence. Similarly, due to

---

[4] Cleveland is at a loss as to why this distinction is even an issue for Bright Builders as the Lanham Act is, for all intensive purposes, synonymous with trademark law.

the abundance of evidence presented to the jury, Bright Builders has failed to meet its burden that the weight of the evidence was contrary to the jury findings. Lastly, this Court's instructions to the jury, when taken as a whole, adequately explained the controlling legal principles of this case. For these reasons, Bright Builders' Renewed Motion for Judgment as a Matter of Law, Motion for a New Trial, and Motion for Relief from Judgment should all be DENIED by this Court.

NELSON MULLINS RILEY & SCARBOROUGH LLP

By:   s/ John C. McElwaine
    John C. McElwaine
    Federal Bar No. 6710
    E-Mail: john.mcelwaine@nelsonmullins.com
    151 Meeting Street / Sixth Floor
    Post Office Box 1806 (29402-1806)
    Charleston, SC  29401-2239
    (843) 853-5200

    Jeffrey S. Patterson
    Federal Bar No. 6603
    E-Mail: jeffrey.patterson@nelsonmullins.com
    One Post Office Square, 30th Floor
    Boston, MA  02109
    (617) 573-4700

    *Admitted Pro Hac Vice*
    Morgan T. Nickerson
    Massachusetts Bar No. 667290
    E-mail: morgan.nickerson@nelsonmullins.com
    One Post Office Square, 30th Floor
    Boston, MA  02109
    (617) 573-4700

    Attorneys for Plaintiff Roger Cleveland Golf Company, Inc.

Charleston, South Carolina

May 9, 2011