IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Roger Cleveland Golf Company, Inc., | ) | C.A. No. 2:09-2119-MBS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER AND OPINION** |
| Christopher Prince, Sheldon Shelley, | ) | |
| Prince Distribution, LLC, and Bright | ) | |
| Builders, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Roger Cleveland Golf Company, Inc. ("Plaintiff") filed the instant action alleging multiple claims related to the infringement of its intellectual property rights. Following a two-day trial, a jury issued a verdict finding that Defendant Christopher Prince ("Defendant Prince") was liable for trademark counterfeiting and infringement pursuant to the Lanham Act, 15 U.S.C. §§ 1051, et seq., and that Defendant Bright Builders, Inc. ("Defendant Bright Builders") was liable for contributory trademark counterfeiting and infringement. The jury also found that both co-defendants violated the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code §§ 39-5-10, et seq. The parties filed post-trial motions that are currently before the court.

**I. Background**

Plaintiff is a manufacturer and distributor of golf clubs, golf equipment, and apparel. At some time before August 12, 2009, a mystery shopper working for Plaintiff made a purchase of several counterfeit CLEVELAND® brand golf clubs from the website "copycatclubs.com." Plaintiff alleged in its complaint that Defendant Prince had registered and operated

copycatclubs.com, as well as two other domain names: worldtimegolf.com and legacygolf.com. Compl. ¶ 19, ECF No. 1. Each domain name resolved to an online store that declared itself "your one stop shop for the best COPIED and ORIGINAL golf equipment on the internet." Id. (emphasis in original). Compl. Ex. A, ECF No. 1-1. It also described itself as a "wholesaler" "carry[ing] a wide selection of the newest clubs from brands such as: Callaway golf, Ping golf, Nike golf, Taylor Made golf, Titleist golf, Cobra golf, Mizuno golf, Cleveland golf, Yes and Odyssey putters." Id.

When Plaintiff deposed Defendant Prince, he testified that he had paid Defendant Bright Builders $10,000 for "coaching and mentoring" services to assist him in building his online business and that copycatclubs.com was the result. See Prince Dep. 104, ECF No. 55-1. In exchange for his $10,000, Defendant Prince testified that he received one-on-one mentoring sessions with a Defendant Bright Builders Project Advisor about developing copycatclubs.com, and that he specifically discussed his plan to sell golf clubs with this advisor. Furthermore, Defendant Bright Builders recommended that he use "wholesalers" or "drop shippers," and that Defendant Bright Builders helped him design and build the website, the name of which alone Plaintiff believed should have put Defendant Bright Builders on notice of Defendant Prince's intention to sell counterfeit golf equipment. Id. at 102, 104-05. Based on this testimony, Plaintiff amended its Complaint on March 23, 2010, adding Defendant Bright Builders and alleging that Defendant Bright Builders was liable for contributory trademark infringement in violation of the Lanham Act and SCUTPA, among other claims.

On September 30, 2010, Defendant Bright Builders filed a one-and-a-half page motion for summary judgment. The motion did not include any legal citations or references to evidence. It merely concluded that Defendant Bright Builders should be dismissed as a defendant because

its "sole involvement . . . is as a web hosting entity[.]" In response, Plaintiff cited Defendant Prince's deposition testimony as evidence that Defendant Bright Builders' relationship to copycatclubs.com was not simply as its hosting entity. Plaintiff argued that Defendant Prince's testimony supported its theory that Defendant Bright Builders meaningfully participated in the creation and the development of the website which, Plaintiff argued, Defendant Bright Builders knew or should have known was intended to sell counterfeit golf equipment. Bright Builders did not file a reply brief. In an order dated December 3, 2010, the court denied Defendant Bright Builders' motion for summary judgment.

This matter proceeded to a jury trial, which began on March 8, 2011 and lasted for two days. Defendant Prince conceded that he had violated the Lanham Act and was liable for trademark counterfeiting and infringement in connection with his advertising and sale of CLEVELAND® brand golf clubs on copycatclubs.com. The parties further stipulated that Defendant Prince's conduct resulted in the infringement of eleven of Plaintiff's registered trademarks. See Stipulation of Parties, ECF No. 108. In support of its case against Defendant Bright Builders, Frederick Fessenden, Plaintiff's mystery shopper, testified via affidavit. Plaintiff also presented testimony from Defendant Prince and Plaintiff's employee Steven Gingrich. Steven Gingrich testified that there is no such thing as a legitimate copied Cleveland golf club. See ECF No. 133, Trial Tr. 21.

Defendant Prince testified that he registered the domain name of copycatclub.com through Defendant Bright Builders and that he was billed by Defendant Bright Builders for registering the name. ECF No. 128, Trial Tr. 6. Defendant Prince also testified that Defendant Bright Builders advised him regarding what content he should put in the website, specifically that he should add text and should copy and paste pictures onto the website, but did not specify

where the pictures should come from. Id. at 9-10. Defendant Prince testified that he was under the impression that Defendant Bright Builders had reviewed his website. Id. at 9. Defendant Prince also testified that Defendant Bright Builders provided software on its website that assisted him in submitting his domain name to search engines. Id. at 12. Defendant Prince also testified that Defendant Bright Builders suggested that he use drop shippers to manufacture his products. Id. at 16. Defendant Prince testified he had told Defendant Bright Builders that he intended to sell golf clubs on the website and that his website clearly indicated the golf clubs were copied. Defendant Prince indicated that Defendant Bright Builders never raised a concern about selling copied clubs nor did they ever threaten to shut the website down. Id. at 32. Defendant Prince testified that Defendant Bright Builders never gave him advice on selling counterfeit golf club, but only about golf clubs in general. Id. at 52. Defendant Prince testified that the individual from Defendant Bright Builders who was assisting him owned his own golf web site and was building one for his father and had said he would link Defendant Prince's website to his website. Id. at 67. Defendant Prince testified that when he first started putting the website together, he told either his coach, mentor, or advisor from Bright Builders that he was going to put "copied clubs" on the website. Id. at 67-68, 77. When asked whether the advisor at Defendant Bright Builders knew he was selling counterfeit illegal clubs, Defendant Prince said, "Maybe, maybe not. I don't know. Probably not." Id. at 68.

At the close of Plaintiff's case, Defendant Bright Builders moved for judgment as a matter of law. The court denied the motion, finding that Plaintiff had proffered sufficient evidence to send the case to the jury. Defendant Bright Builders then proceeded to present its case in defense. Defendant Bright Builders called George Paul Cole, CEO of Defendant Bright Builders, to testify. Deposition testimony from Michael Johnson, employee of Defendant Bright

4

Builders, was read into the record. Also, deposition testimony from Emily Davies, office manager for Defendant Bright Builders, was read into the record.

Michael Johnson was on the coaching team for Defendant Bright Builders and served as Defendant Prince's advisor. Johnson Dep. 24. The coaching teams consisted of advisors, technical support team and internet business coaches. Johnson Dep. 38-40. Johnson testified that his role as an advisor was to teach the client the basics of how the coaching system worked, where to find information and how to generally start his or her business. Johnson Dep. 38. Johnson testified that Defendant Prince failed to attend most of the webinars on general website building and consistently failed to complete assignments or check in with his coach. Johnson Dep. 81, 83. Johnson testified that Defendant Prince informed him that he was interested in selling golf clubs and that he had found suppliers. Johnson Dep. 89. Johnson testified that Defendant Bright Builders' software and web building tools provided general stock page layouts and themes with automatically inserted form text that the user was supposed to overwrite with his or her own content. Johnson Dep. 44-47.

Johnson testified that Defendant Prince largely stopped communicating with him until July 14, 2008 because computer issues prevented Defendant Prince from working on the website. Johnson continued to assign Defendant Prince with tasks. Their next coaching session was on August 4, 2008. During this session, Defendant Prince stated that he had gotten a new computer and was just starting to work on his site again. Johnson sent him some more assignments and signed him up for webinars. On August 31, 2008, Defendant Prince registered his domain name "copycatclubs.com" through Defendant Bright Builders. ECF No. 135-10. Johnson was aware that Defendant Prince had registered the domain name "copycatclubs.com." Johnson testified that he assumed Defendant Prince was selling generic golf clubs and that he did not review the

5

content placed by Defendant Prince on the website, nor was he asked by Defendant Prince to review the website. Johnson Dep. 111. Johnson indicated that Defendant Prince paid for various services, such as marking and custom layout, that would have required Defendant Bright Builders to view and work with the actual content of Defendant Prince's website, but that Defendant Prince did not in fact utilize any of those services. Johnson Dep. 115-16. Johnson called Defendant Prince on September 10, 2008, and Defendant Prince indicated that he had been working on his site and had made progress. Defendant Prince had technical questions that Johnson told him he should discuss with technical support. After this, Johnson sent two emails to Defendant Prince explaining that his coaching was officially over as of September 22, 2008. Johnson had no personal contact with Defendant Prince after this point.

Greg Cole testified that Defendant Bright Builders did not police customer websites, but relied on third-parties to contact Bright Builders if there were complaints and Bright Builders would investigate. Cole testified that prior to the lawsuit filed in the instant action, nobody had complained about Defendant Prince's website. (ECF No. 132, Trial Tr. 19, 67). Cole testified that in all instances where Defendant Bright Builders received complaints about trademark infringement, the complaints were investigated and the necessary steps were taken by Bright Builders to address the complaints, including removing the allegedly infringing content from its customers' websites. Id. at 81.

After the evidence in the case had been presented, Defendant Bright Builders renewed its motion for judgment as a matter of law, which the court denied. Subsequently, a jury charge conference was held outside the presence of the jury, in which all parties were given the opportunity to make objections to the court's proposed jury instructions. The following is an excerpt of the jury instructions:

6

**Instruction No. 9.3: Contributory Trademark Counterfeiting - Liability**

Cleveland Golf alleges that Defendant Bright Builders is liable for the sale of counterfeit golf clubs through the copycatclubs.com website under the theory of contributory trademark infringement.

In order to prove contributory infringement liability, Cleveland Golf must prove that:
(1) Christopher Prince and/or Prince Distribution, LLC directly violated Plaintiff's trademark;
(2) Bright Builders continued to supply services to the infringer after it knew or had reason to know that the services were being used or would be used to infringe the mark; and
(3) Bright Builders had sufficient control over the means of the infringing conduct to merit liability.

The Court has already found that Cleveland Golf has proven element #1, above. Therefore, you are only to decide whether Cleveland Golf has proven elements #2 and #3, above, by a preponderance of the evidence.

Knowledge in this context means that Bright Builders had more than a general knowledge or reason to know that its service was being used to sell counterfeit goods. Cleveland Golf must show by a preponderance of the evidence that Bright Builders had some contemporary knowledge that the website at issue was being used or would be used in the future for infringing activities. The knowledge element is satisfied by proof of a preponderance of the evidence that Bright Builders had either actual or constructive knowledge of the infringing activity. Actual knowledge exists where it can be shown by a defendant's conduct or statements that it actually knew of specific instances of direct infringement. Constructive knowledge exists where it can be shown a defendant should have known of the direct infringement.

The knowledge element is similarly satisfied if Cleveland Golf can show by a preponderance of the evidence that Bright Builders was willfully blind to the infringing activity. In other words, if Bright Builders had reason to suspect that users of its service were engaging in infringing activities, it may not shield itself from learning of the particular infringing transactions by looking the other way. Ignorance is no defense to violations of the Lanham Act. (ECF No. 118).

Defendant Bright Builders made several objections to the jury instructions. The first was that based on Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93 (2d Cir. 2010), an instruction should be given that "should have known" with regard to constructive knowledge requires willful blindness

and that willful blindness is the equivalent of actual knowledge.[1] The court overruled the objection, stating that the jury charge is an accurate statement of the law from Inwood Laboratories, Inc. v. Ives Laboratories Inc., 456 U.S. 844 (1982), where the Supreme Court held that if a manufacturer or distributor continues to supply its product to one whom it known or has reason to know is engaging in trademark infringement, he is contributorily responsible for any harm done. See also Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980, 984 (9th Cir. 1999) (stating that Inwood's test applies to a service provider as well, so long as he or she exercises sufficient control over the infringing conduct). The court ruled that the Fourth Circuit does not require altering the charge in the way that Defendant Bright Builders requested.

Furthermore, Defendant Bright Builders requested an instruction based on the Fourth Circuit's decision in Georgia Pacific Consumer Products, LP v. Von Drehle Corp., 618 F.3d 441 (4th Cir. 2010). According to Defendant Bright Builders, the holding in Georgia Pacific Consumer Products required the jury to find that Defendant Builders directly induced Defendant Prince's infringement and that Defendant Bright Builders continued to supply its product to Defendant Prince knowing that such infringement was taking place. The court overruled the objection, stating that under Inwood, which the Fourth Circuit cited in Georgia Pacific Consumer Products, liability attached through inducement or by a showing that a party continued to supply the infringer even though the party knew or should have known of the infringement. See id. at 450). The court noted that inducement is only one way to show contributory liability in trademark infringement. The court found that inducement was not being alleged by Plaintiff in

---

[1] The court notes that Tiffany does not state anywhere that "should have known" is equivalent to willful blindness. The court's precise words were, "[I]f eBay had reason to suspect that counterfeit Tiffany goods were being sold through its website and intentionally shielded itself from discovering the offending listings or the identity of the sellers . . .eBay might very well have been charged with knowledge of those sales sufficient to satisfy Inwood's 'knows or has reason to know' prong. A service provider is not, we think, permitted willful blindness." Id. at 109 (internal citations omitted).

8

this case, so an instruction only as to "continued to supply," taken directly from <u>Inwood</u>, was an accurate statement of the law.

Defendant Bright Builders did not object to the court's determination that it would include the phrase "ignorance is no defense to the violations of the Lanham Act" to the jury instructions. Defendant Bright Builders objected to the instruction regarding SCUTPA, arguing that language should be included stating that a violation of SCUPTA cannot be found unless the jury first finds that Defendant Prince violated the Lanham Act. The court made a ruling that the jury instructions would remain as is.

The jury returned with a verdict that Defendant Prince was liable for trademark counterfeiting and infringement and that Defendant Bright Builders was contributorily liable for Defendant Prince's trademark counterfeiting and infringement and that both defendants had violated the SCUTPA. The jury further found that Defendant Bright Builders' conduct was "willful" and assessed damages in the amount of $70,000.00 per mark which, when multiplied by eleven infringements per the parties' stipulation, resulted in a damages award against Defendant Bright Builders of $770,000.00. <u>See</u> Verdict Form, ECF No. 119. The jury also found that Bright Builders had violated the SCUTPA and assessed an additional $250.00 damage award for that violation. <u>See id.</u>

This matter is before the court on post-trial motions filed by Defendant Bright Builders and Plaintiff. The court will address the following motions in turn: Defendant Bright Builder's renewed motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b); motion for a new trial pursuant to Rule 59; and motion for relief from judgment pursuant to Rule 60(a) (ECF No. 131 superseded by ECF No. 135); Defendant's motion for remittitur and to alter or amend the judgment (ECF No. 130); and Plaintiff's motion for attorneys' fees (ECF No. 127).

## II. Defendant Bright Builders' Renewed Motion for Judgment as a Matter of Law; Motion for a New Trial; Motion for Relief from Judgment

*Rule 50(b)*

Rule 50(b) of the Federal Rules of Civil Procedures provides that, if a court denies a motion for a judgment as a matter of law made any time before the case is submitted to the jury, the movant may file a renewed motion after judgment is entered and may include an alternative or joint request for a new trial under Rule 59. Fed. R. Civ. P. 50(b). In ruling on the renewed motion, the court may: "(1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." Id.

A party seeking a judgment as a matter of law contrary to a jury verdict faces an imposing standard. The court must consider "'whether there was a legally sufficient evidentiary basis for a reasonable jury, viewing the evidence in the light most favorable to the prevailing party, to find for that party.'" King v. McMillan, 594 F.3d 301, 312 (4th Cir. 2010) (quoting ABT Bldg. Prods. Corp. v. Nat'l Union fire Ins. Co., 472 F.3d 99, 113 (4th Cir. 2006)) (internal citations omitted). Under Rule 50(b), the court may not make credibility determinations or weigh the evidence. Ultimately, "[i]f reasonable minds could differ about the verdict," then the court is "obliged to affirm." King, 594 F.3d at 312 (quoting ABT Bldg. Prods. Corp., 472 F.3d at 113).

Defendant Bright Builders argues that Plaintiff did not meet its burden showing that there was a legally sufficient evidentiary basis for the jury verdict, asserting that Plaintiff failed to present evidence that Defendant Bright Builders had more than a general knowledge or reason to know that its service was being used to sell counterfeit goods. Defendant Bright Builders argues that Plaintiff presented no evidence that Defendant Bright Builder had knowledge that Defendant

Prince had "particular listings [that] are infringing or will infringe in the future," as required for a finding of contributory infringement under Tiffany.

Defendant Bright Builders misinterprets the particularity requirement from Tiffany. In that case, eBay appeared to have conceded that it knew as a general matter that counterfeit Tiffany products were listed and sold throughout its website. eBay argued that "such generalized knowledge is insufficient, and that the law demands more specific knowledge of individual instances of infringement and infringing sellers before imposing a burden upon eBay to remedy the problem." See id. at 107. The Second Circuit agreed and found that where eBay knew of specific users and listings infringing, eBay took down the listings, and that otherwise general knowledge of infringing users was insufficient to trigger liability. The Second Circuit stated that for contributory trademark infringement liability to lie, some contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary. Id.

In this case, unlike eBay, Defendant Bright Builders does not run a marketplace; therefore the requirement that Defendant Bright Builders know of particular "listings" in order to be liable is not precisely transferrable. Defendant Bright Builders hosts websites and provides web design consultant services to individual clients. Accordingly, generalized knowledge in this context would exist if Defendant Bright Builders knew that some of its nearly 20,000 clients were infringing via their respective websites but did not know specifically which clients. In the instant case, Plaintiff never alleged that Defendant Bright Builders had generalized knowledge of infringement. Instead, Plaintiff has maintained its theory that Defendant Bright Builders had knowledge or reason to know that Defendant Prince, its particular client, was infringing, which is in line with Tiffany's particularity requirement.

Viewing the evidence in the light most favorable to the prevailing party, ie. Plaintiff, Defendant Bright Builders was told that Defendant Prince was selling "copied clubs." Furthermore, Defendant Bright Builders assisted Defendant Prince in registering the domain name "copycatclubs.com." Furthermore, Defendant Prince indicated that he believed Defendant Bright Builders had reviewed his website and had also given him advice as to what content to add to the website. The website itself stated: "Your one stop shop for the best <u>COPIED</u> and <u>ORIGINAL</u> golf equipment on the internet." Accordingly, there was a legally sufficient evidentiary basis for a reasonable juror to conclude that Defendant Bright Builders knew or had reason to know that its website hosting services were being used by Defendant Prince to commit trademark infringement.

*Rule 59*

Under Rule 59, a motion for a new trial is evaluated under a different standard from a motion for judgment as a matter of law. In considering a motion for a new trial, "a trial judge may weigh the evidence and consider the credibility of witnesses, and if he finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, he must set aside the verdict, even if supported by substantial evidence, and grant a new trial." <u>Chesapeake Paper Prods. Co. v. Stone & Webster Eng'g Corp.</u>, 51 F.3d 1229, 1237 (4th Cir. 1995) (quoting <u>Poynter by Poynter v. Ratcliff</u>, 874 F.2d 219, 223 (4th Cir. 1989)).

Defendant Bright Builders presented evidence that it never viewed Defendant Prince's website; that it was never informed that Defendant Prince was selling copied or counterfeit golf clubs; and that it assumed "copycatclubs" referred to generic clubs and not counterfeit clubs. As noted earlier, there was also substantial evidence presented by Plaintiff to support a finding that Defendant Bright Builders knew or had reason to know that Defendant Prince was selling

counterfeit clubs. The clear weight of evidence did not support one party or the other in this case. Instead, the evidence presented could have justified a jury verdict in favor of either party. Furthermore, the court finds that the jury was entitled to make credibility findings that reflected adversely on either parties' witnesses because nothing in record overwhelmingly showed any particular witness to be not credible. After weighing the evidence and considering the credibility of the witnesses, the court finds that the verdict was not against the clear weight of evidence or based on false evidence. Furthermore, there is no indication that a miscarriage of justice took place.

Defendant Bright Builder also alleges that it is entitled to a new trial, because jury instructions provided in this case were erroneous and caused the jury to have misapplied fundamentally controlling legal principles in a prejudicial manner. The test of adequacy of jury instructions is not one of technical accuracy in every detail. It is simply the practical one of whether the instructions construed as a whole, and in light of the whole record, adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party. See Spell v. McDaniel, 824 F.2d 1380, 1395 (4th Cir. 1987).

First, Defendant Bright Builders contends that the instruction regarding contributory liability failed to include the phrase "specific instances" in charging that constructive knowledge exists where it can be shown a defendant should have known of the infringement. This objection is without merit. The full paragraph of the jury instruction referred to by Defendant Bright Builders states: "Actual knowledge exists where it can be shown by defendant's conduct or statements that it actually knew of specific instances of direct infringement. Constructive knowledge exists where it can be shown a defendant should have known of the direct

infringement." ECF No. 118, p. 5.  In context, "the direct infringement" in the second sentence clearly refers back to the "direct infringement" discussed in the first sentence; therefore, the "specific instances of" phrase from the first sentence is imputed to the second sentence without the necessity of repeating the phrase.  Furthermore, in the jury instruction preceding the explanation of actual and constructive knowledge, the court charged that knowledge means "more than a general knowledge . . . Cleveland Golf must show . . . that Bright Builders had some contemporary knowledge that the website at issue was being used or would be used in the future for infringing activities." Id.  Thus, based on the jury instructions as a whole, the jury was adequately informed that liability depended on Defendant Bright Builders' actual or constructive knowledge of a specific instance of infringement.

Second, Defendant Bright Builders contends that the charging language regarding actual and constructive knowledge was not qualified by instructing that the knowledge must pertain to the particular direct infringer at issue in the case, as opposed to any other infringers that Defendant Bright Builders may know of.  This objection is without merit for the reasons explained above.  Specifically, the jury instructions included language that liability depends on some contemporary knowledge of the "website at issue" – not just anyone's website.  Further, Plaintiff raised no allegations that Defendant Bright Builders had knowledge of other infringing websites and focused solely on Defendant Prince's website, which is clearly the website at issue in this case.  Thus, the jury was adequately informed that Defendant Bright Builders' liability depended on its knowledge of the particular direct infringer at issue in the case, Defendant Prince.

Third, Defendant Bright Builders contends that the jury instruction defining constructive knowledge, as when a defendant knows or "should have known" of the direct infringement, is

erroneous because it provides the jury with no guidance in deciding what "should have known" means. Based on the instructions as a whole, "should have known" had the same meaning as "had reason to know," which was stated multiple times in the paragraphs preceding the phrase "should have known," as the alternative to actual knowledge. Id. at 5. Furthermore, the court's explanation of constructive knowledge was taken directly from Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 854 (1982), which held that to prevail on a contributory trademark infringement claim, a plaintiff can show that the defendant continued to supply its product to one "who it knows or has reason to know is engaging in trademark infringement." A recent case from the Ninth Circuit also used the phrase "actual or constructive knowledge" to describe the Inwood test. See Louis Vuitton Malletier v. Akanoc Solutions, Inc., 658 F.3d 936, 943 (9th Cir. 2011). Defendant Bright Builder's contention that the jury would not know how to apply the constructive knowledge definition of "should have known" is unavailing in light of the fact that the theory of contributory trademark infringement from the Inwood case is outlined in depth in the jury instructions.

Next, Defendant Bright Builders states that the willful blindness instruction was erroneous because it failed to express that willful blindness must apply to Defendant Bright Builder's having reason to suspect Defendant Prince in particular, as opposed to having reason to suspect "users of its services" in general. Furthermore, Defendant Bright Builders contends that the court erred in not including the phrase "[and where Defendant] fails to investigate." This objection is without merit. Defendant Bright Builders cannot succeed by citing to isolated sentences and contending that they are misleading, without any reference to preceding sentences or the rest of the jury charge. The first sentence of the jury charge describing the willfully blind standard states, "the knowledge element is similarly satisfied if Cleveland Golf can show by a

15

preponderance of the evidence that Bright Builders was willfully blind to **the** infringing activity." Reading the instruction as a whole, "the" refers to the infringing activity at issue, not general infringing activity. Secondly, the court did not need to recite the phrase "failure to investigate" because it had already stated that willful blindness is having reason to suspect and then "looking the other way." In this context, failure to investigate is synonymous with "looking the other way," which is language taken directly from Tiffany. The jury was adequately informed that Defendant Bright Builders' willful blindness, if found, must apply to its having reason to suspect Defendant Prince, in particular, of infringing activity.

Lastly, Defendant Bright Builders argues that the instruction that states, "ignorance is no defense to violations of the Lanham Act," is incorrect and misleading. Defendant Bright Builders argues that the instruction was intended to read, "ignorance of trade law," not ignorance in general. See ECF No. 129, p. 9. However, the court stated in the jury charge conference that the language that was being added was "Ignorance is no defense to violations of the Lanham Act," to which Defendant Bright Builders responded that it had no objection. See ECF No. 129, p. 43. Defendant Bright Builders, having failed to object to this jury instruction at trial, waives his right to raise it now. See Fed. R. Civ. P. 51. To the extent that Rule 51(d)(2) requires that the trial court review the objection for plain error even if it has not been preserved, the court finds no plain error. The plain understanding of "ignorance" as stated in the instructions is as a reference to "looking the other way," stated directly before the word "ignorance." It is not plausible that a juror would have disregarded the entire preceding set of jury instructions as to contributory liability and understood the statement "ignorance is no defense" to mean that Defendant Bright Builders could be held liable even if it had no actual or constructive knowledge of Defendant Prince's infringement. The standard for contributory liability is set forth in the jury

instructions at length; therefore, the jurors were adequately informed what standard they were required to apply to find liability as to Defendant Bright Builders.

*Rule 60*

Defendant Bright Builders indicates in the caption of its motion that it is also seeking relief under Rule 60 of the Federal Rules of Civil Procedure. Rule 60(a) provides a mechanism for the court to correct clerical mistakes, oversights and omissions in judgments. Rule 60(b) provides a means for the court to "relieve a party or its legal representative from a final judgment, order, or proceeding" for six separately listed reasons including "mistake, inadvertence, surprise, or excusable neglect," "newly discovered evidence," "fraud," and "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1), (2), (3) & (6). There is no discussion in Defendant Bright Builders' motion about the applicability of this Rule, nor does it identify the section of the Rule under which it seeks relief. If the motion was based on any of the arguments related to Rule 50(b) or Rule 59, the court has addressed those above. To the extent that Defendant Bright Builders is arguing that the mistaken or erroneous jury instructions justify relief, the court is not persuaded for the reasons discussed above.

### III. **Defendant Bright Builders' Motion for a Remittitur and to Alter or Amend the Judgment**

Defendant Bright Builders filed a motion for the entry of judgment granting remittitur and altering or amending the judgment pursuant to Fed. R. Civ. P. 59. Defendant Bright Builders states that despite Defendant Prince's admission that he did not tell Defendant Bright Builders he was selling counterfeit golf clubs, the jury found Defendant Bright Builders liable and awarded more than twenty-seven times the amount of damages against Defendant Bright Builders, $70,000.00 per mark, as it did against Defendant Prince, $2,500.00 per mark.

17

Defendant Bright Builders concedes that this amount is within the statutory limits set by Congress, but argues that the amount is not justified and not reasonable. Defendant Bright Builders' brief in support of the remittitur spends significant time contesting liability itself. Defendant Bright Builders also contends that it did not make or share in any profit from Defendant Prince's infringement. Furthermore, Defendant Bright Builder cites to Greg Cole's testimony about the extreme financial hardship the business was currently experiencing, including exhibits of tax returns indicating no profit, that were entered into evidence. Defendant Bright Builders contends that it was in exactly the same position as Defendant Prince with regard to ability to pay and should have been assessed $2,500.00 per mark as Defendant Prince was.

A remittitur, used in connection with Rule 59(a) is the established method by which a trial judge can review a jury award for excessiveness. Remittitur is a process by which the trial court orders a new trial unless Plaintiff accepts a reduction in an excessive jury award. <u>Atlas Food Systems and Services, Inc. v. Crane Nat'l Vendors, Inc.</u>, 99 F.3d 587 (4th Cir. 1996).

In this case, the Lanham Act permits the jury to award up to $2,000,000.00 per mark. The jury verdict against Defendant Bright Builders was $70,000.00 per mark; therefore, it fell within the statutory range established by Congress. Defendant Bright Builder's argument that it is not liable, despite the jury's verdict, is not instructive in the court's review of whether the jury award was excessive. Furthermore, this argument has been addressed by the court above in its review of Defendant Bright Builder's other post-trial motions. The jury's award of $70,000.00 was only 3.5% of the $2,000,000.00 per mark it was authorized to award. The jury was entitled to consider the differences between Defendant Prince and Defendant Bright Builders, their financial abilities, and their respective characteristics in awarding different damages for the purpose of deterring Defendants from future infringement. Given the facts of the case, including

the different characteristics between Defendants, a jury award against Defendant Bright Builders that was 3.5% of the authorized amount was not excessive.  Defendant Bright Builder's motion for remittitur is denied.

## IV.  **<u>Plaintiff's Motion for Attorneys' Fees and Costs</u>**

Plaintiff moved the court to award a joint and several award of attorneys' fees and costs pursuant to 15 U.S.C. § 1117 and S.C. Code Ann. § 39-5-140 against Defendant Prince and Defendant Bright Builders.  Defendant Bright Builders responded in opposition to the motion arguing, among other things, that it would be inappropriate to charge it for any time and expenses Plaintiff incurred in prosecuting the case against Defendant Prince.  Defendant Bright Builders notes that it was not added to the action until March 23, 2010, almost eight months after the first billing was entered for the case on July 9, 2009.  In its reply brief, Plaintiff argues that "because the jury found Bright Builders and Prince to be contributorily liable for the damages incurred" the attorneys' fee award should be joint and severable against both co-defendants.

Plaintiff's contention that the jury found Defendant Prince and Defendant Bright Builders both "contributorily liable" for trademark infringement is not accurate.  The jury concluded that Defendant Prince was liable for trademark counterfeiting and infringement.  The jury concluded that Defendant Bright Builders was liable for *contributory* trademark counterfeiting and infringement.  The two basis for liability are distinct.  Plaintiff has not provided any citation or legal basis pursuant to statute or common law, permitting the court to grant a joint and several award of attorneys' fees in this case.  Even if Plaintiff contends that Defendant Bright Builders should be held accountable for the cost of prosecuting Defendant Prince, because such prosecution was a pre-requisite to a finding of contributory liability, Plaintiff presents no argument as to why Defendant Prince should incur Plaintiff's cost of prosecuting Defendant

Bright Builders, as would be the case in a joint and several award. Accordingly, the court finds that a joint and several award of attorney's fees is not appropriate and that Plaintiff should re-file the motion accordingly. By this, the court makes no finding as to how costs should be apportioned or the relationship between the costs of proving direct infringement and the costs of proving contributory infringement. Furthermore, the court has made no finding as to any other issue raised by Plaintiff's motion for attorneys' fees.

## V. Conclusion

The court denies Defendant Bright Builder's renewed motion for judgment as a matter of law; motion for a new trial; and motion for relief from judgment (ECF No. 131 superseded by ECF No. 135). The court also denies Defendant Bright Builder's motion for remittitur and to alter or amend the judgment (ECF No. 130). Lastly, the court denies Plaintiff's motion for attorneys' fees with leave to re-file the motion for attorneys' fees as to individual co-defendants within fourteen (14) days of the filing of this order (ECF No. 127).

**IT IS SO ORDERED.**

                                                s/ Margaret B. Seymour
                                                Margaret B. Seymour
                                                Chief United States District Judge

March 30, 2012
Columbia, South Carolina